IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PSI DISTRIBUTION INCORPORATED AND PRODRIL SERVICES INTERNATIONAL LIMITED | § § § § | |
| APPELLANTS | § § | CIVIL ACTION NO. CA-H-09-CV-2366 |
| VS. | § § § | |
| PARTICLE DRILLING TECHNOLOGIES, INC., A NEVADA CORPORATION, *et al* | § § § § | |
| APPELLEES | § | |

## MOTION TO DISMISS APPEALS AND TAX COSTS

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, Particle Drilling Technologies, Inc. a Nevada Corporation ("PDTI NV"), and Particle Drilling Technologies, Inc. a Delaware Corporation ("PDTI DE"), Debtors-in-Possession in this case (collectively "PDTI" or "Debtors") and moves this Court, pursuant to Federal Rules of Bankruptcy Procedure 8011 and 8014, to dismiss the appeals filed by Appellants and tax costs and in support thereof would respectfully show the Court as follows:

### Background

1. On May 30, 2009, PDTI NV filed its original voluntary petition under Chapter 11 of the Bankruptcy Code. On June 1, 2009, PDTI DE filed its original voluntary petitions for relief under Chapter 11 of Title 11 of the Bankruptcy Code, 11 U.S.C. §§101 et seq. (the "Bankruptcy Code"). An order directing joint administration of these cases was entered on June 3 2009 (Docket #9). The Debtors continues to operate their business and manage their property as a debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No trustee or Committee has been appointed.

1

2. PDTI NV is a development stage company operating in the oilfield service and technology industry. PDTI DE is a non operating entity that is wholly owned by PDTI NV.

3. PDTI NV is a public company that has filed its annual SEC Form 10K with the Securities and Exchange Commission during all relevant times.

4. Debtor PDTI NV was formed to acquire technology to commercialize its patented and patent-pending Particle Impact Drilling ("PID") system, which is a mobile system that readily adapts to conventional drilling rigs and is designed to provide a radical increase in penetration rates for drilling oil and gas wells, particularly through deep hard and abrasive zones or other difficult-to-drill formations.

5. The purpose of the PID system is to improve drilling efficiencies and significantly improve overall economics to the energy industry in regions around the world where slow drilling rates result in high costs to find and develop oil and gas reserves. Once fully developed, this technology could be highly marketable. However, the Debtors currently have no source of income and have relied solely on debt and equity funding for survival.

6. Particle Drilling, Inc., a Texas Corporation ("PDI Tex"), purchased the patents associated with the PID system ("Patents")[1] from PSI Distribution Inc. ("PSI") and ProDril Services International Limited ("PSIL") (collectively "Appellants"). The parties documented the transfer via certain agreements including the September 10, 2003 Acquisition Agreement ("Acquisition Agreement"). PDT Tex also entered into a Royalty Agreement ("Royalty Agreement") with PSI and PSIL on January 20, 2004. The purchase price was the assumption of $1.2 million in debt plus the royalties set forth in the Royalty Agreements and the Acquisition Agreement. These agreements did not provide PSI, PSIL, or any other party with any security interest, lien, right of reversion, reservation of title or other interest in the Patents

---

[1] The patents in question consist of U.S. Patent Nos. 6,386,300, 6,581,700, 7,258,176, 7,398,838, 7,398,839 and related pending applications (the "Patents").

2

or any other property of the Debtors going forward to secure payment of the royalties. As discussed more fully below, the bankruptcy court ruled on this issue of law on July 14, 2009, with respect to PDTI NV's request to enter into post petition financing.

7.  Subsequently, PDI Tex, was merged into PDTI DE, which ultimately became a wholly owned subsidiary of PDTI NV.

8.  PDTI DE assigned the patents to PDTI NV, which did not assume liability for the royalties.

9.  In May 2009, Debtors' prepetition lender refused to advance further funds for Debtors' operations; thereby precipitating the filing of these jointly administered Chapter 11 proceedings.

10. During the entire time that PDI TEX, PDTI DE or PDTI NV owned the patents, these entities never earned a single penny of profit or ebitda. No royalties were ever due to PSI and PSIL and consequently no royalties were ever paid.

11. Immediately upon filing for bankruptcy relief, the Debtors filed a motion seeking authority to obtain post petition credit under 11 U.S.C. §364 in order to continue to fund operations ("DIP Motion")(Docket #7). On June 5, 2009, the bankruptcy court approved interim DIP financing and set a final hearing on the DIP Motion for June 24, 2009 (Docket #19).

12. On June 24, 2009, PSI and PSIL filed objections to the DIP Motion asserting that they maintained royalty interests in the Patents and demanding that the DIP Lender take its lien subject to the royalties. The bankruptcy court continued the hearings on the DIP Motion until July 7, 2009, ordering that the parties brief the issues in dispute prior to that hearing.

13. On July 7, 2009, the bankruptcy court held a hearing to determine what interest, if any, PSI and PSIL had in the Patents that PSI sold to Debtors. At the July 7, 2009, hearing,

neither PSI or Prodril could demonstrate to the bankruptcy court that the Royalty Agreements or any other document granted them a security or other interest in the Patents, nor could they demonstrate that they had done anything to perfect their interest with a filing in either the Patent and Trademark Office or the Secretary of States' office in Delaware or Nevada. Consequently, the bankruptcy court requested the parties to determine whether there existed any other plausible theory as to why the obligations of the Royalty Agreements impaired the Patents and continued the hearing until July 14, 2009.

14. On July 14, 2009, the bankruptcy court determined that PSI and PSIL did not have any lien or other interests in the Patents and entered orders approving final DIP financing pursuant to 11 U.S.C. §364 ("DIP Order")(Docket #103), free and clear of any interest claimed interest held by PSI or PSIL  Subsequently, the DIP lender advanced the funds to the Debtors required by the DIP Order.

15. On July 23, 2009 PSI and PSIL filed a Notice of Appeal of the DIP Order (Docket #114), thereby initiating this bankruptcy appeal.

16. On July 29, 2009, the bankruptcy court entered a Memorandum Opinion detailing its findings from the hearings on the DIP Motion and Sale Motion (Docket #134).

17. To date, PSI and PSIL have never filed a motion for stay of the DIP Order pending appeal.

## THE APPEAL IS MOOT AND SHOULD BE DISMISSED

18. The reversal or modification on appeal of an authorization under 11 U.S.C. § 364 to obtain credit or incur debt, or of a grant of a priority or a lien, does not affect the validity of any debt so incurred, or of any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, ***unless such authorization and the incurring of such debt, or the granting of such priority or lien, were***

4

*stayed pending appeal*. See 11 U.S.C. § 364(e)(West 2009) (emphasis added).  The DIP order specifically states that the Dip Lender acted in good faith.  Therefore, the DIP Lender obtains the benefit of this section.

19. Federal Rule of Bankruptcy Procedure 8005 provides that a motion for a stay of the judgment or order of a bankruptcy judge pending appeal must ordinarily be made in the first instance to the bankruptcy judge.  The judge may suspend or make any other appropriate order during the pendency of an appeal upon such terms as will protect the rights of all parties in interest.  Fed. R. Bankr. Pro. 8005 (West 2009).

20. The necessity of a stay under Rule 8005 has been analogized to the rationale of Rule 8(a) of the Federal Rules of Appellate Procedure:

> Although as a general rule a party need not seek a stay of a lower court's judgment in order to protect its right to appeal, the "consequence of failing to obtain a stay is that the prevailing party may treat the judgment of the [lower] court as final [notwithstanding that an appeal is pending.]." 9 J. Moore, Federal Practice para. 208.03, at 8-9 (2d ed. 1979). Thus, in the absence of a stay, action of a character which cannot be reversed by the court of appeals may be taken in reliance on the lower court's decree. As a result, the court of appeals may become powerless to grant the relief requested by the appellant. Under such circumstances the appeal will be dismissed as moot. Moore, id., at 8-10.

*American Grain Ass'n v. Lee-Vac, Ltd.,* 630 F.2d 245, 247 (5th Cir. 1980).

21. Since PSI and PSIL did not obtain a stay pending appeal, the DIP lender has relied on the DIP Order and advanced the requisite funds to the Debtors.  Consequently, Section 364(e) prevents this Court from enforcing a decision to reverse or modify the DIP order, no effective relief can be granted, and this appeal should be dismissed as moot.  *See In re Adams Apple*, 829 F.2d 1484 (9th Cir. 1987); *Resolution Trust Corp. v. Swedeland Dev. Group (In re Swedeland Dev. Group)*, 16 F.3d 552, 555 (3d Cir. 1994); *Weinstein, Eisen & Weiss, L.L.P. v. Gill (In re Cooper Commons, L.L.C.)*, 430 F.3d 1215 (9th Cir. 2005).

## MOTION TO TAX COSTS

22. Costs of this appeal should be taxed against the PSI and PSIL under Fed. R. Bankr. P. 8014. Rule 8014 states, in relevant part, "Except as otherwise provided by law, agreed to by the parties, or ordered by the district court or the bankruptcy appellate panel, costs shall be taxed against the losing party in an appeal."

23. Dismissal of an appeal because it is moot is further cause to tax costs.

24. The Appellee Debtors asks that costs of the appeal be taxed against the Appellants, jointly and severally.

WHEREFORE premises considered, the Appellees pray that this Court dismiss the appeal with prejudice to re-filing and tax costs to the Appellants, and grant such other and further relief as is just.

DATED: August 6, 2009

Respectfully submitted,

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By: */s/ Edward L. Rothberg*
EDWARD L. ROTHBERG
State Bar No. 17313990; Fed. I.D. No. 2780
Attorney in Charge
Eleven Greenway Plaza, Suite 1400
Houston, Texas 77046
Telephone: (713) 961-9045
Facsimile: (713) 961-5341

OF COUNSEL:

HUGH M. RAY, III
State Bar No. 24004246; Fed. I.D. No. 22090
MELISSA A. HASELDEN
State Bar No. 00794778; Fed. I.D. No. 19704
Eleven Greenway Plaza, Suite 1400
Houston, Texas 77046
Telephone: (713) 961-9045
Facsimile: (713) 961-5341

ATTORNEYS FOR THE PARTICLE DRILLING TECHNOLOGIES, INC.

**Certificate of Conference**

I certify that I conferred telephonically in good faith with Fincher G. Jack Bobo, counsel for Appellants on August 5, 2009 about the relief sought and we were unable to agree. I also left voicemail messages for Michael Greer on August 5, 2009 and August 6, 2009 about the relief sought but was unable to talk to him.

                                                    /s/ *Melissa A. Haselden*
                                        MELISSA A. HASELDEN

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing has been forwarded to the following parties in interest via ECF and/ or by first-class mail, postage prepaid, on August 6, 2009, to the following.

Fincher G. Jack Bobo
500 Killebrew Street
P O Box 427
Lyon, MS 38645

Michael D. Greer
P. O. Box 907
Tupelo, MS 38802                                       */s/ Edward L. Rothberg*

                                                Edward L. Rothberg