# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| PARTICLE DRILLING TECHNOLOGIES, | § | |
| INC., A NEVADA CORPORATION, *ET AL.*, | § | |
| | § | **APPEAL** |
| | § | Civil Action No. **CA-H-09-CV-2366** |
| DEBTORS. | § | |
| | § | |
| PSI DISTRIBUTION INCORPORATED | § | |
| AND PRODRIL SERVICES | § | |
| INTERNATIONAL LIMITED | § | |
| | § | |
| APPELLANTS | § | |
| | § | |
| | § | |
| VS. | § | |
| | § | |
| PARTICLE DRILLING TECHNOLOGIES, | § | |
| INC., A NEVADA CORPORATION, *et al* | § | |
| | § | |
| APPELLEES | § | |

---

## BRIEF OF APPELLEES

---

Edward L. Rothberg
State Bar No. 17313990
Hugh M. Ray, III
State Bar No. 24004246
WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
11 Greenway Plaza, Suite 1400
Houston TX 77046
(Telephone)  713-961-9045
(Facsimile)  713-961-5349

ATTORNEYS FOR APPELLEES

# CERTIFICATE OF INTERESTED PERSONS[1]

I certify that the following is a list of all persons who or which are financially interested in the outcome of this appeal, and the names and addresses of the opposing law firms and/or counsel to the parties of this appeal.

Appellees/Debtors are:

Particle Drilling Technologies, Inc, a Texas Corporation, and
Particle Drilling Technologies, Inc, a Nevada Corporation
Their principal address is
5611 Baird Court
Houston, Texas 77041

Shares of Particle Drilling Technologies, a Nevada Corporation (NASDAQ: PDRT) were publicly traded on NASDAQ. However, trading is now conducted on the "Pink Sheets".

The Appellants are:
PSI Distribution Incorporated
Prodril Services International Limited.
Their shares are not publicly traded and they have not filed a corporate ownership statement.

Appellants retained the following counsel of record (admitted pro hac vice):

Fincher G. Jack Bobo
500 Killebrew Street
P O Box 427
Lyon, MS 38645

Michael D. Greer
P. O. Box 907
Tupelo, MS 38802

Unsecured creditors of the Debtors may also have an indirect financial interest in the outcome of this appeal.

SIGNED:    August 16, 2009


_____ /s/ Hugh M. Ray, III
HUGH M. RAY, III

---

[1] Normally, the appellant performs this obligation of disclosure. However, as Appellants' brief does not contain a designation of interested parties, Appellees are filing this certificate.

# TABLE OF CONTENTS

**PAGE**

**CERTIFICATE OF INTERESTED PERSONS** ........................................................... i

**TABLE OF CONTENTS** ........................................................................................ ii

**TABLE OF AUTHORITIES** .................................................................................. iii

**I. STATEMENT OF BASIS OF APPELLATE JURISDICTION** ........................... 2

**II. STANDARD OF REVIEW** ................................................................................. 2

**III. RESPONSE TO STATEMENT OF FACTS** ...................................................... 3

    *A.  Appellant's Statement of Facts Relies on Facts Outside the Record.* ................................... 3
    *B.  Appellants failed to Designate (or order) a Transcript of the Trial, or Call Any Witnesses.* 5
    *C . Appellants Description of "the Transaction" is Hyperbole and Incomplete* ....................... 5
    *D.  The Trial Court Found That The Royalty Agreements did not Encumber the Patents.* ......... 6
    *E.  The Trial Court Found That the evidence Did Not Support a Finding that the Royalty Agreements were Executory Contracts.* ................................... 7

**IV. ARGUMENT** ...................................................................................................... 8

    *A.  The Failure to Designate (Even Request) a Transcript Means the Appellants Cannot Identify any Error in the Court Below* ................................... 8
    *B.  Appellants Failed to Show the Royalty Agreements Confer Rights to the Patents.* .............. 9
    *C.  Appellants are Simply Wrong on the Kenyon Case* .......................................................... 12
    *D.  The Trial Court was Right to Refuse Appellants' Extraordinary Equitable Servitudes* ...... 13
    *E.  The Trial Court Properly Refused Rescission as an Equitable Remedy* ............................. 15

**V. CONCLUSION** .................................................................................................. 17

**CERTIFICATE OF SERVICE** ............................................................................. 18

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Banker v. City of Groves*, 295 S.W.2d 548, 550-551 (Civ. App.—Beaumont 1956, ref. n.r.e.) .. 16

*Butner v. U.S.*, 440 U.S. 48 (1979) ................................................................................ 10, 13, 14

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) .............................................................. 2

*Datatreasury Corp. v. Wells Fargo & Co.*, 490 F.Supp.2d 756, 764 -65 (E.D.Tex. 2007).......... 11

*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1424 (5th Cir. 1996) (en banc) ................. 2

*Ebberts v. Carpenter Production Co*., 256 S.W.2d 601, 626-627 (Civ. App.—Beaumont 1953, ref. n.r.e.) ...................................................................................................................... 16

*Ennis v. Interstate Distributors, Inc*., 598 S.W.2d 903, 906 (Civ. App.—Dallas 1980, no writ). 16

*Exxon Chem. Patents, Inc. v. Lubrizol Corp*., 935 F.2d 1263 (Fed. Cir. 1991)............................. 6

*Frostbaum v. Ochs*, 277 B.R. 470, 473 (E.D.N.Y. 2002)............................................................ 9

*Humphrey v. Camelot Retirement Communi*ty, 893 S.W.2d 55, 59 (Tex. App.—Corpus Christi 1994)............................................................................................................................. 15

*Hunt County Oil Co. v. Scott*, 67 S.W. 451, 452 (Civ. App.—1902, ref.).................................. 16

*In re Abijoe Realty Corp.*, 943 F.2d 121 (1st Cir. 1991) ............................................................ 8

*In re Black*, 222 B.R. 896, 899 (9th Cir. BAP 1998)...................................................................... 3

*In re Cajun Elec. Power Co-op, Inc.*, 119 F.3d 349, 355 (5th Cir. 1997) ...................................... 3

*In re Louisiana World Exposition, Inc.,* 832 F.2d 1391, 1395-96 (5th Cir. 1987) ........................ 2

*In re Sandra Cotton, Inc*., 89 B.R. 324 (W.D.N.Y. 1988)............................................................ 9

*In re Topco, Inc.*, 894 F.2d 727, 742 (5th Cir. Tex. 1990) ........................................................ 16

*In Re Waterson, Berlin & Snyder Co.* 48 F. 2d 704 (S.D. N.Y. 1931) .................................. 14, 15

*In Re: Tidy House Products Co.,* 79 F. Supp. 674 (S.D. Iowa 1948) ........................................ 15

*Johnson v. United States*, 520 U.S. 461 (1997) ......................................................................... 2

*Jones v. Cooper*, 938 S.W.2d 118, 123 (Tex. App.—Houston [14th Dist] 1996, writ denied). 6, 9, 10, 11, 12, 13, 14

*Kenyon v. Automatic Instrument Co.*, 160 F.2d 878 (6th Cir. 1947)...................................... 12, 13

*McEwen v. City of Norman*, 926 F.2d 1539, 1550 (10th Cir. 1991)............................................. 8

*SeaQuest Diving LP v. S & J Diving Inc. (In re SeaQuest Diving LP)*, 2009 U.S. App. LEXIS 18056 (5th Cir. Aug. 12, 2009) ...................................................................................... 2

*Standard Oil v. Markum,* 64 F. Supp. 656, (S.D. N.Y. 1945) ..................................................... 14

*Thompkins v. Lil Joe Records, Inc.*, 476 F.3d 1294, 1312 (11th Cir. 2007)................................. 15

*Trujillo v. Grand Junction Reg'l Ctr.*, 928 F.2d 973, 976 (10th Cir. 1991)................................... 8

*United States v. Olano*, 507 U.S. 725, 732 (1993).........................................................................2

*United States v. Scarborough*, 134 Fed. Appx. 238, 242 (10th Cir. 2005)................................8

## Statutes

11 U.S.C. §363.............................................................................................................................6

11 U.S.C. §544.............................................................................................................................6

28 U.S.C. § 158...........................................................................................................................2

35 U.S.C. § 261.....................................................................................................................6, 9, 13

## Rules

Fed. R. App. P.  28......................................................................................................................3

Fed. R. Bankr. P. 8006................................................................................................................8

Fed. R. Bankr. P. 8010................................................................................................................3

Fed. R. Bankr. P. 9011................................................................................................................3

0553442

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | | |
|---|---|---|---|
| **IN RE:** | § | | |
| **PARTICLE DRILLING TECHNOLOGIES,** | § | | |
| **INC., A NEVADA CORPORATION,** *ET AL.*, | § | | |
| | § | **APPEAL** | |
| | § | Civil Action No. **CA-H-09-CV-2366** | |
| **DEBTORS.** | § | | |
| | § | | |
| **PSI DISTRIBUTION INCORPORATED** | § | | |
| **AND PRODRIL SERVICES** | § | | |
| **INTERNATIONAL LIMITED** | § | | |
| | § | | |
| **APPELLANTS** | § | | |
| | § | | |
| | § | | |
| **VS.** | § | | |
| | § | | |
| **PARTICLE DRILLING TECHNOLOGIES,** | § | | |
| **INC., A NEVADA CORPORATION,** *et al* | § | | |
| | § | | |
| **APPELLEES** | § | | |

---

FINAL ORDER APPEALED FROM
THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

---

# BRIEF OF APPELLEES

TO THE HONORABLE KEITH ELLISON, UNITED STATES DISTRICT JUDGE:

This is an appeal from a final order of the Bankruptcy Court approving the incurrence of post-petition indebtedness payment to 11 U.S.C. §364 and authorizing bidding procedures for a subsequent sale under 11 U.S.C. §363.

## I. STATEMENT OF BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction based on 28 U.S.C. § 158, as an appeal from a final order of the United States Bankruptcy Court for the Southern District of Texas.[2] *In re Louisiana World Exposition, Inc.,* 832 F.2d 1391, 1395-96 (5th Cir. 1987).

## II. STANDARD OF REVIEW

A party who fails to preserve error is subject to the "plain error" standard of review. See, e.g., *SeaQuest Diving LP v. S & J Diving Inc. (In re SeaQuest Diving LP)*, 2009 U.S. App. LEXIS 18056 (5th Cir. Aug. 12, 2009) (plain error standard of review applies if a party failed to preserve a record of the error); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1424 (5th Cir. 1996) (en banc). To the extent there is no fact in the record and the documents referenced on appeal were not introduced into evidence, the Court is to reverse only if 1) the error is plain, 2) it affects substantial rights and 3) the error seriously affects the fairness, integrity or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732 (1993); see also *Johnson v. United States*, 520 U.S. 461 (1997).

If there is evidence in the record and the error is preserved, the proper standard of review is abuse of discretion. A court abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990). Under the abuse of discretion standard, this Court must have a definite and firm conviction that the trial court committed a clear error of judgment in the conclusion it reached

---

[2] Herein referred to as "Bankruptcy Court" or "lower court" or "Court".

before reversal is proper.  *In re Black*, 222 B.R. 896, 899 (9th Cir. BAP 1998).  Any subsidiary

findings by the Court are reviewed for "clear error."  *In re Cajun Elec. Power Co-op, Inc.*, 119

F.3d 349, 355 (5th Cir. 1997).

## III. RESPONSE TO STATEMENT OF FACTS

**A.  *Appellant's Statement of Facts Relies on Facts Outside the Record.***

The Court has set oral argument on the appeal for August 17, 2009.  That is before the

deadline for the Debtors to counter-designate the record.  The record for Appellees is not

complete.  For Appellants, however, the time to designate the record has passed.

Appellant makes *no* citations to the record in the statement of facts.  No fact is

specifically linked to something in the designated record.

In a normal appellate brief, certain background information may be provided without

citation to the record.  However, the inclusion of background information is not a license to

create facts favorable to your position.  Specifically, when background information is crucial to

the decision, it must be supported by citations to the record and it must be truthful.  See Fed. R.

App. P.  28 (a)(7), (a)(9)(A) and (b); Fed. R. Bankr. P. 8010 (a)(1)(D)-(E) and (a)(2) Fed. R.

Bankr. P. 9011;  see also *Alameda Films S A De C V v. Authors Rights Restoration Corp.*, 331

F.3d 472, 483 (5th Cir. 2003) (declining to reach the merits of claims on appeal due to

appellant's failure to cite to authority or to the "voluminous record" in support of its assertions).

Appellant's record is nearly devoid of facts from which this Court could rule that the

court below erred.  There is no fact in evidence that shows the technology patented is valuable.

Assuming that the past market capitalization could be considered (though not in the record of the

court below or this court), that market capitalization does not reflect the value of the patents, but

rather the speculative value of the stock

There is no evidence in the record to support the argument that the Debtors were "literally hours away" from a field test.  There is no evidence in the record to show that a field test is scheduled.

Most importantly, even if this Court considered these "facts" outside the record, it is uncertain how they demonstrate clear error.

The only evidence relevant to an appeal is the evidence offered to the trial court.  The Trial court held a trial on July 7, 2009.  The docket (of which the court can take judicial notice) reflects the following entry about the trial:

> Courtroom Minutes. Time Hearing Held: 9:30 am. Appearances: Ed Rothberg and Melissa Haselden for debtors; Ron Peterson for Ed Heil; Matthew Okin for LC Capital Master Fund, Ltd; Michael Greer for Jack Bobo; Nancy Holley for US Trustee; Larry Hercules for Curlett Family Ltd Partnership (Related document(s): 7 Motion for Authority to Obtain Credit Under Section 364, 28 Motion to Set Auction, 51 Disclosure Statement Hearing). Discussion regarding case status. David Eliff was sworn and provided testimony. Debtor exhibits 1-15 were admitted. PSI exhibits 1-5 were admitted. The Court will required [sic] briefing re: royalty as stated on the record. Briefs are due by midnight 7/12/2009. The Court continued the hearings to 7/14/2009 at 02:00 PM at Houston, Courtroom 404 (MI). Order signed approving appointment of CRO. (rsmi) (Entered: 07/08/2009)

Docket of Case #09-33744.

According to this entry, Appellants called *no* witnesses at trial.

Moreover, Appellants never admitted their Trial Exhibit 6 – Assumption and Assignment Agreement.  See Docket #86 – the PSI Exhibit List.  Indeed, several of the documents Appellants designated as part of the record on this appeal were <u>never offered or admitted into evidence at trial</u>.  For instance, The "Exclusive License Agreement with CFLP." (Tab 11 to the Appendix) is neither in the designation of the record, nor was it offered into evidence at trial.  Tab 8 of the Appellants' Appendix (PSI Trial Exhibit 6) was not offered or admitted.  Tab 12 of Appellants

Appendix (Asset Purchase Agreement) was admitted at trial by the Debtors, but not designated in the record.

### B.  Appellants failed to Designate (or order) a Transcript of the Trial, or Call Any Witnesses

There is no transcript of the trial.  Apparently, one was never requested.

According to the Docket (of which this Court may take judicial notice) Appellants never produced *any* witnesses at the trial.  Appellants either never offered their exhibits after exhibit 5, nor did they appeal their exclusion or seek to expand the record.  The failure of the Appellants to produce a clean record is a failure of Appellants' own making.

### C . Appellants Description of "the Transaction" is Hyperbole and Incomplete

Again, **t**here is no specific citation in the record to facts in the section labeled "the Transaction".  Indeed, one of the documents -- "Assignment and Assumption Agreement to CFLP" was not placed in evidence at the trial.  Appellants have chosen portions of several documents which are the basis of Appellant's claims about "the transaction".

However, the "transaction" was, according to the few documents properly designated by Appellants and admitted by the trial court below, several transactions.  The only two contracts salient to the appeal are those requiring the Debtors to pay royalties based on future income from the patents.  The lumping of all the documents into a single "transaction" is an effort to side-step the factual findings of the Bankruptcy Court as to the two Royalty Agreements (tabs 9 and 10 to Appellants' Appendix), by confounding those agreements with several others.  The Royalty Agreements are the agreements Appellants contend 1) give them rights to the patents and 2) are executory contracts entitled to special treatment.  The Royalty Agreements were admitted into evidence and ruled on by the trial court.  See Memorandum Opinion at p. 3, 7 and 8.

### D. The Trial Court Found That The Royalty Agreements did not Encumber the Patents

The Trial court noted (and it is not subject to dispute) that the bankruptcy code authorizes a sale of assets "free and clear" of claims and un-perfected liens. Memorandum opinion at 3; 11 U.S.C. §363(b) and (f). A lien that is not perfected against a bona fide purchaser can be set aside in bankruptcy. 11 U.S.C. §544(a). The Debtors had requested authority to establish bidding procedures to sell the patents free and clear of Appellants' claims.

The trial court explained "The only real issue presented is whether Particle Drilling can sell its patents free and clear of royalty rights." Memorandum Opinion at p. 4. The trial court then found "PSI [Appellants] cites no authorities that support its contention that PSI's royalty rights attach to the patents in a manner that subjects future transferees to its rights." Memorandum Opinion at p. 5.

The Memorandum Opinion then notes that Patents are, by statutory definition, personal property under the Patent Act of 1952. 35 U.S.C. § 261; *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 935 F.2d 1263, 1268 (Fed. Cir. 1991) ("The Patent Act of 1952, resolving conflicting precedent, provided that 'patents shall have the attributes of personal property.'").. Appellants, however, cited only cases that pre-date the 1952 Act, and could not distinguish the *Jones v. Cooper* decision, which the trial court found to be on point:

> The authorities cited by PSI all pre-date the 1952 Patent Act. None conflict with the 1997 *Jones v. Cooper* [*Jones v. Cooper*, 938 S.W.2d 118, 123 (Tex. App.—Houston [14th Dist] 1996, writ denied)] opinion. **The *Jones* case is directly on point.** In *Jones*, Jones sold patents to Koomey in return for royalty rights. Id. at 120. The agreement also provided that the royalty rights would bind all successors or assignees. Id. The patents were subsequently transferred to Cooper and Jones attempted to enforce his royalty rights against Cooper. Id. The Fourteenth Court of Appeals rejected the same arguments raised by PSI. Id. at 122–26. The Court reasoned that Jones could not enforce its royalty rights on Cooper based on doctrines that apply to real property because patents are personal property. Id.

Memorandum Opinion at p. 5 (emphasis added).

The trial court then found that there was no evidence of a perfected lien offered by the Appellants and made a factual finding accordingly:

> PSI <u>failed to produce documentation evidencing perfection of its lien</u> pursuant to article 9 or a statutory provision that provided for automatic perfection of its lien. During the July 14 hearing, PSI no longer urged its lien-based arguments. Absent a perfected lien, Particle Drilling can sell the patents free and clear of PSI's royalty rights.

Memorandum Opinion at p. 6 (emphasis added)

The trial court's factual findings were that PSI (Appellants) have no lien. Appellants challenge that factual finding in their issues number 2 and 3.

### E.  The Trial Court Found That the Evidence Did Not Support a Finding that the Royalty Agreements were Executory Contracts.

In their issue number 1, Appellants claim that the Royalty Agreements were executory contracts, though the trial court found otherwise.

The trial court agreed with the Appellants' law on the "Countryman" definition that defines executory contracts. Memorandum Opinion at p. 7. The trial court did not base its decision on a disagreement over the law of what is an executory contract. Rather it found the facts did not meet the "Countryman" legal standard. Specifically, the trial court noted <u>evidence did not support</u> a conclusion that the Countryman definition was met:

> <u>PSI failed to produce any evidence of significant obligations Particle Drilling owed to PSI other than payment of royalties.</u> It is true that Particle Drilling has obligations that arise from the unrecorded lien, but those obligations are debtor-creditor obligations and not of the type contained in an executory contract. Nor does it appear that PSI owes any continuing obligations to Particle Drilling, other than those related to the payment of money. Accordingly, the Court finds that the Royalty Agreements are not executory with respect to PSI.

Memorandum Opinion at 7-8 (emphasis added).

Thus, the trial court found the patents could be encumbered and, eventually, sold free of Appellants' royalty claims.

## IV. ARGUMENT

### A.    The Failure to Designate (Even Request) a Transcript Means the Appellants Cannot Identify any Error in the Court Below

To the extent that they claim the trial court erred, the Appellants have a duty to produce a usable record.  "The responsibility for voids in the appellate record must reside with the party whose claim of error depends for its support upon any portion of the record of the proceedings below which was omitted from the designation of the record on appeal."  *In re Abijoe Realty Corp.*, 943 F.2d 121, 123 & n. 1 (1st Cir. 1991).

The failure to designate a transcript on appeal prohibits an appellant from challenging the factual findings of the trial court:

> Counsel's failure to designate the relevant record requires this court to hold that Appellant has not met the burden of proving that the district court's findings were clearly erroneous. See *McEwen v. City of Norman*, 926 F.2d 1539, 1550 (10th Cir. 1991); *Trujillo v. Grand Junction Reg'l Ctr.*, 928 F.2d 973, 976 (10th Cir. 1991) ("When a trial transcript is not designated as part of the record on appeal, an appellate court cannot review the district court's factual findings and must accept them as correct.").

*United States v. Scarborough*, 134 Fed. Appx. 238, 242 (10th Cir. 2005).

When an appellant of a bankruptcy court's order fails to even <u>request</u> a transcript, Courts may dismiss the appeal:

> Frostbaum failed to designate or request for inclusion as part of his appeal record the transcript of the March 8, 2001 bankruptcy court hearing or the actual Fee Order entered by Judge Craig.  **Pursuant to Fed. R. Bankr. P. 8006 it is the appellant's obligation to supply any part of the lower proceedings transcript which is necessary to the adjudication of his claim on appeal**.  Because Frostbaum is challenging the validity of the March 8, 2001 Fee Order, the transcript of the hearing, which addressed the grounds for entering the final order, and the Fee Order are critical to this court's review.  Accordingly, **Frostbaum's failure to include, or even attempt to request such essential elements of the appeal record would justify this court's dismissal of the claim without**

**further consideration of the merits**. See FED R. BANKR. P. 8001; *In re Sandra Cotton, Inc*., 89 B.R. 324 (W.D.N.Y. 1988) (holding failure to file transcript warranted dismissal of appeal); 9E AM. JUR. 2D Bankruptcy § 3550 (2000).

*Frostbaum v. Ochs*, 277 B.R. 470, 473 (E.D.N.Y. 2002) (emphasis added).

The failure to request a transcript and produce a usable record is the failure of the Appellants. Appellants did not even produce much usable evidence in the trial court.

Appellants called no witnesses at trial to contradict the testimony of Debtors' witnesses. In the absence of a transcript, the Court should presume that that Appellees witness produced all the evidence necessary for the lower court to rule correctly on the facts.

As noted above, the standard of review when a party fails to preserve error is the "plain error" standard. Appellants brief does not set forth any basis to meet that standard. The alleged error is not "plain", the dispute involves money, not "substantive rights", and the reversal is not required to preserve the integrity of judicial proceedings. Rather, no excuse is given why no witness was called, why documents were not offered (though apparently in Appellants' possession) and why the transcript was never requested.[3]

### B. Appellants Failed to Show the Royalty Agreements Confer Rights to the Patents.

The trial court correctly ruled on the evidence and found that there was no evidence the Royalty Agreements were perfected liens. The trial court found the facts were similar to those shown in the case of *Jones v. Cooper*, supra.

There have been two important sea changes in the law relevant to the issues at bar during the second half of the twentieth century. First, 35 U.S.C. § 261, was amended by the Patent Act of 1952, with the addition of one sentence, "Subject to the provisions of this title, patents shall have the attributes of personal property." As noted by the Court in *Jones v. Cooper*, 938 S.W.2d

---

[3] The Court can take judicial notice that its transcriber can create a trial transcript on a "daily" basis, if requested. Appellants cannot legitimately claim that the transcript could not be prepared.

118 (Tex. App. Houston 14th Dist. 1996), this amendment resolved an uncertainty in patent law as to whether Patents should be treated as realty or personalty. *Jones*, 938 S.W.2d at 122. Second, the United States Supreme Court in *Butner v. U.S.*, 440 U.S. 48 (1979) rejected the concept that there exists a substantive federal common law on ownership of property and instead, mandated that Federal Courts look to the law of the state, in this case Texas.

In the matter at bar, Texas Courts have addressed this issue and rejected the same argument that Appellants seek to advance here. In *Jones*, plaintiff Jones sought to enforce against defendant Cooper a royalty clause that was part of a sale agreement between Jones and non-party Koomey. Jones had sold his rights to a patent to Koomey in exchange for a 15 year term of annual payments equal to a percentage of the revenue brought in by that patent. The sale agreement further provided that the royalty obligation would bind Koomey's successors, assigns or licensees.

The patent in *Jones* changed hands at least twice after Koomey's purchase. First, Koomey pledged the patent as security for a loan upon which Koomey defaulted. The lender foreclosed and sold the patent to non-party PB-BOP, Inc. PB-BOP, Inc. then transferred its interest in the patent to defendant Cooper. Jones then sued Cooper for the royalties that he was promised as part of the initial sale to Koomey. Cooper never explicitly assumed any obligations under the original sale agreement by which Koomey purchased the patent from Jones.

The *Jones* court rejected each of the arguments advanced by Jones as to why Cooper owed royalties to Jones by the earlier royalty agreement that the initial purchaser entered into. First, Jones likened his royalty interest in the patent to a royalty interest in an oil or mineral estate. *Id*. at 122. Jones pointed out that under Texas law, a royalty interest in an oil or mineral estate is considered to be a form of real property separate from the property from which they

derive and claimed that a royalty interest in a patent should be no different. *Id.* The court rejected this analogy, recognizing that a patent is a piece of personal property, not real property. One cannot carve out and retain a title right to royalties once one sells a patent. Nor does a royalty "run with" the title of a sold patent absent the assumption of that royalty obligation by the patent assignee. *Id.* Instead, a royalty is merely consideration for the assignment; the promise of royalties to an assignor as consideration does not mean that the assignor retains any interest in the transferred property. *Id.* at 123.

Next, Jones argued that defendant Cooper should be equitably bound to pay royalties to him because Cooper had notice of the royalty agreement at the time he took title to the patent. *Id.* at 123. Again, Jones relied upon cases involving real property and, again, the *Jones* court distinguished those cases on the basis that the patents are personal rather than real property. *Id.* As such, Jones' asserted royalty interest did not "run with" the patent regardless of whether or not Cooper had notice of that royalty interest. *Id.*

A subsequent case that considered *Jones* approved of its result. The court in *Datatreasury Corp. v. Wells Fargo & Co.*, 490 F.Supp.2d 756, 764 -65 (E.D.Tex. 2007) affirmed 522 F.3d 1368 (Fed. Cir. 2008) considered a similar argument as advanced here and in *Jones*. The *Datatreasury* court held that a party could not be bound by a patent purchase agreement unless that party consented to be bound, relying on *Jones* in observing that patents are personal property, that conditions do not run with the title of patents and that subsequent assignees of patents are not bound by such conditions unless they explicitly assume those conditions. *Id.*

The *Jones* holding applies to the case at bar. Here, as in *Jones*, the Debtors agreed to pay royalties to assignor PSI. As in *Jones*, that agreement was merely part of the consideration that the Debtors paid to PSI. By agreeing to pay royalties to PSI, the Debtors did not allow PSI to

retain any property interest in the Patents. Further, PSI's royalty claim cannot run with title to the Patents -- which is essentially what PSI argues by asserting that they have an equitable servitude in the Patents -- as the Patents are personal, rather than real property. The only way that a subsequent assignee of the Patents could be bound by the royalty obligation would be if it were to assume that obligation, which the assignee will assuredly decline to do.

Without citation to <u>facts</u> in the record to support this conclusion, Appellants state that the facts of Jones are "clearly distinguishable". Appellant's brief at p. 18. The trial court found that "The *Jones* case is directly on point." Memorandum Opinion at p. 5. The trial court heard testimony and reviewed evidence. There is no fact in the record that establishes the trial court was clearly erroneous in applying *Jones*. Indeed, there is no evidence Appellants offered into evidence the Assignment and Assumption agreement referenced on page 21 of Appellants' brief.

Appellants do not argue that *Jones* is bad law, superceded, or otherwise an inaccurate read of the rights of royalty owners. Appellants' brief at 21. Instead, they state that Judge Isgur misapplied the facts to the argument. See Appellant's brief at p. 21 ("The *Jones* case carefully defined the difference in the *Jones* facts and the *Kenyon* facts <u>and let the specific facts of each case and the equities of each case govern the distinction</u>.") (emphasis added). Here, the facts were found by the trial court (after a hearing, with evidence and testimony) to be similar to *Jones* and the trial court's factual determination should be afforded great deference.

### C. Appellants are Simply Wrong on the Kenyon Case

Appellants has argued that *Kenyon,* supra is still good law notwithstanding the 1952 patent act. However, *Kenyon* does not help Appellants because it does not address the issue the trial court addressed. In *Kenyon*, patents that were in receivership were sold at a public sale pursuant to a court's order. *Id*. at 883. The *Kenyon* court did not propose a sale "free and clear"

of the royalty obligation on the patents.  *Id*. at 884.  Moreover, the Court stated, "If the [Delaware Receivership] court had desired to sell the patent free from Kenyon's claim it could easily enough have so decreed."  *Kenyon* at 884.  Here, the trial court addressed a superpriority lien against an unperfected personal property lien.

Furthermore, as noted by the court in *Jones*, the *Kenyon* case was decided before the current version of 35 U.S.C. § 261 of the Patent Code which was officially enacted by the 1952 Patent Act.  *Jones*, 938 S.W.2d at 125 n. 3.  Section 261 is entitled "Ownership; assignment" and makes clear that "patents shall have the attributes of personal property."  This language was added after *Kenyon* and makes clear that patents should be treated as any other type of personal property.

The *Kenyon* court may have reached a different result if the current version of Section 261 of the Patent Act were in force.  The *Kenyon* court noted that there was no guidance in the law in 1947 on whether the royalty rights may be transferred on a sale of a patent, and relied on an English Chancery Court case, which did not relate to a bankruptcy.  *Kenyon*, 160 F.2d at 884.  Today, section 261 of the Patent Act dictates that patents must be treated as personal property, which -- unlike real property -- cannot be encumbered by an equitable servitude.

Finally, the Kenyon decision was rendered before *Butner*.  In the post *Butner* world, the Court would have looked to the relevant state law not substantive federal common law.  Therefore, the Trial Court did not commit reversible error in concluding *Kenyon* does not apply to the facts of the case.

### D.  The Trial Court was Right to Refuse Appellants' Extraordinary Equitable Servitudes

Appellants cite hoary pre-1952 cases claiming that they have "equitable servitudes", which they claim trump the Bankruptcy Code's power to sell "free and clear".   The trial court

heard testimony and reviewed documents and concluded that such equitable servitudes were not available. The trial court did not err because Appellants' cases were decided in the 1930's or 1940's, before the Patent Act made clear that patents should be classified as personal property and before the *Butner* decision. Unlike the *Jones* case, none of these cases are factually on point.

PSI cited *Standard Oil v. Markum,* 64 F. Supp. 656, (S.D. N.Y. 1945) as support for its claim that royalty rights can be equitable servitudes. However, the court in *Standard Oil* was merely trying to determine if the United States Government and the Alien Property Custodian[4] were entitled to seize the petitioner's property rights as being property of an enemy of the United States Government. *Id*. at 657. In order to determine what property should be seized, the Court had to classify the property right to determine what property rights the Alien Property Custodian could retain and what property rights could be seized by the Government. The case has nothing to do with the facts at issue here. While *Standard Oil* classifies certain property rights as equitable servitudes, it does not address whether the royalty rights of the type at issue in this case create an equitable servitude that encumbers a patent. Therefore, *Standard Oil* is not relevant to the present case. The trial court was right to find it inapplicable to the facts of this case.

Also, appellants cite another case that the Bankruptcy Court refused to find applicable to the present facts. *In Re Waterson, Berlin & Snyder Co.* 48 F. 2d 704 (S.D. N.Y. 1931) addressed whether musical composers could rescind royalty contracts and recover the copyrights issued to the publisher; or, in the alternative, receive future royalties. *Id*. at 706. The issue presented in the case related to contract rescission and whether the trustee could sell the copyrights free and clear of royalties, not whether the royalty payments created an equitable servitude on the patents.

---

[4] The Alien Property Custodian himself is a unique statutory creature that, thankfully, is consigned to history.

*Id.* Appellants do not argue they have copyright claims. Therefore the trial court correctly concluded that *In Re Waterson* did not support an equitable servitude on the patents.[5]

The *In Re: Tidy House Products Co.,* 79 F. Supp. 674 (S.D. Iowa 1948) case is also not appropriate to the facts. The *Tidy House* case had to do with the rights of a trustee to trademark rights which had been conveyed to a company by an executory agreement. *Id.* at 675, 676. Neither party disputed the petitioner's royalty rights. *Id.* at 675. The present dispute does relate to Appellants' trademark royalty rights. Appellants' argument that its royalty rights create an equitable servitude that runs with the Patents is not addressed in *In Re Tidy House*.

Of course, all of the cases involving equitable servitudes, by definition, require equity. The trial court did not find that equity compelled any relief to Appellants. Appellants are unable to show that the trial court's refusal to grant them an equitable servitude (or other broad equitable relief) was clearly erroneous.

### E. The Trial Court Properly Refused Rescission as an Equitable Remedy

Appellants, while discussing the executory contract issue, attempt to argue a fourth issue – that rescission of the Royalty Agreements is required. Appellants Brief at 12-13. The argument is plainly wrong since it *concedes* that "a trial court may grant rescission, and that the decision to grant rescission lies within its sound discretion". I<u>d</u>. quoting *Humphrey v. Camelot Retirement Communit*y, 893 S.W.2d 55, 59 (Tex. App.—Corpus Christi 1994). Then, Appellants point to no clearly erroneous fact justifying reversal of the trial court's decision. The trial court presumably did not grant equitable rescission because the facts did not warrant it.

In any case, rescission is within the trial court's discretion and need not be granted if <u>inequitable</u> to one party or the other. *Banker v. City of Groves*, 295 S.W.2d 548, 550-551 (Civ.

---

[5] Moreover, *Waterson* has been superseded by the Bankruptcy Code. *See, Thompkins v. Lil Joe Records, Inc.*, 476 F.3d 1294, 1312 (11th Cir. 2007).

App.—Beaumont 1956, ref. n.r.e.); *Ebberts v. Carpenter Production Co*., 256 S.W.2d 601, 626-627 (Civ. App.—Beaumont 1953, ref. n.r.e.).

Moreover, Appellants brief does not allege fraud, intentional misrepresentation, or mistake.  See *In re Topco, Inc.*, 894 F.2d 727, 742 (5th Cir. Tex. 1990) (mutual mistake, fraud, intentional misrepresentation and complete failure of consideration may justify rescission).

Appellants' own brief states that the Debtor spent millions developing the patented technology – to the point that a test "was literally hours away".[6]  Presumably that was sufficient evidence for the trial court to rule that the Debtor had performed on the Royalty Agreements.  If the Debtor accepted the Patents and worked with them, it performed.

Moreover, the facts demonstrated that rescission is simply impossible.  The law regarding rescission in Texas requires that *all* parties be placed in the *status quo ante*, so that the parties are as if no contract had ever existed.  *Hunt County Oil Co. v. Scott*, 67 S.W. 451, 452 (Civ. App.—1902, ref.).  In connection with the Royalty Agreements, the predecessor of the Debtor assumed and paid approximately $1.2 million in debts owed by Appellees.  Neither side put on any evidence indicating that they intended to refund the $1.2 million or even had the capacity to do so.  Thus, if the Debtor expended millions to improve the technology, then it is virtually impossible to return the parties to their former position.

Courts hold that the difficulty in returning parties to the *status quo ante* should be considered in determining whether, under a particular state of facts, rescission would be inequitable.  *Ennis v. Interstate Distributors, Inc*., 598 S.W.2d 903, 906 (Civ. App.—Dallas 1980, no writ).  The trial court was right to refuse to grant the equitable remedy of rescission

---

[6] Appellants' Brief at 1.  Again, there is no testimony about this in the record.  This Court should presume that, in the absence of the Appellants' preserving error, the Court below was correct.  Appellants must meet a weighty burden to demonstrate that the decision below was the result of plain error that affects substantive rights relating to the integrity of the judicial process.

based on the facts before it.  There is no colorable claim of clear error made by the trial court in its review of the facts.

## V. CONCLUSION

In summary, Appellants have utterly failed in their obligation to produce a usable record on appeal justifying the reversal of the trial court.  The Appellants' brief hurls unfounded claims of "distinguishable" facts and "applicable" cases.  Yet, Appellants admit that the *Jones* case is good law.  Appellants argue (without foundation) that the trial court was clearly erroneous in finding "The Jones case is directly on point."

The trial court considered the facts, the testimony, and the evidence.  The trial court did not commit clear error in its analysis of the facts and properly applied the facts to the applicable law – the *Jones* case – which is on point.

.

Dated: August 16, 2009

Respectfully submitted,

WEYCER, KAPLAN, PLUAKSI & ZUBER, P.C.

By:_____
Edward L. Rothberg
SBN  17313990
Hugh M. Ray, III
SBN 24004246
11 Greenway Plaza, Suite 1400
Houston TX 77046
(Telephone)  713-961-9045
(Facsimile)   713-961-5349

ATTORNEY FOR APPELLEES.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 16, 2009, I sent a copy of this brief via fax and first class U.S. mail to the counsel of record that are listed below.

Fincher G. Jack Bobo
500 Killebrew Street
P O Box 427
Lyon, MS 38645
662-624-2420

Michael D. Greer
P. O. Box 907
Tupelo, MS 38802
662-842-6870

*/s/ Hugh M. Ray, III*

Hugh M. Ray, III
